OPINION
James E. Townsend, Jr. appeals from his conviction of possessing crack cocaine in an amount in excess of ten but less than twenty-five grams.
The facts underlying Townsend's conviction are set out in the parties' briefs and are supported by our review of the trial record.
On March 24, 2000, at approximately 7:41 p.m. Dayton police executed a search warrant at 2318 McCall Street, Dayton, Ohio. Detective Bradley A. Barnett arrived at approximately 7:00 p.m., and conducted 30-35 minutes of surveillance prior to the search warrant being executed. During surveillance Barnett observed two cars enter the parking area and two subjects got out and met other subjects on the porch. After a few moments, the two subjects went back to their vehicles and the others entered the residence. Barnett testified that these actions were consistent with selling drugs. Detective Barnett then informed the Dayton Police Department SWAT Team to execute the search warrant.
Officer Kevin Phillips was assigned to maintain cover around the garage area. While performing his duties, he heard a "pounding sound as if someone was trying to open the [garage] door or to push against it in some way." Inside Phillips encountered an individual, later identified as William Burton and he was ordered to the ground and handcuffed. Phillips then observed another individual, later identified as Townsend, "crouched" down by the driver's side door of a car parked in the garage. Phillips could only see the hump of Townsend's back through the car windows. Phillips immediately ordered Townsend to show his hands, walk over to him, and get on the ground which Townsend complied. Phillips noticed a plastic baggie that appeared to contain crack cocaine on the roof of the car directly in front of where Townsend was "crouched" down. Phillips also noticed a dinner plate that contained what appeared to be crack cocaine residue on the trunk of the car and Phillips conducted a protective pat down of Townsend for weapons and located a large key ring on his person.
After the two men were secured, Officer Phillips conducted a protective sweep to ensure that no one was hiding in the garage. No other persons were found in the garage. Underneath the car, near the driver's side door, Phillips located a baggie of marijuana, pack of Newport cigarettes, and $812.00 in cash. The cash was found "wadded" up as if someone had "hastily threw it." The cash also revealed denominations of a one hundred dollar bill, four fifties, twenty-three twenties, four tens, one five, and seven ones. Officer Phillips explained that crack cocaine is usually sold in small quantities, which has a street value of twenty dollars. The evidence was collected and preserved. Townsend and Burton were then escorted into the house where the other officers located a secure area.
Officer Jonathan Seiter was the third officer to come through the back door during the execution of the search warrant. There were five occupants found in the residence: three black males and two black females, who were sitting in the living/dining room area. Officer Seiter also encountered and cuffed two people, one female and one male, lying on the floor. Officer Seiter then tugged on the door to the rear bedroom but it was locked. There was a deadbolt lock located just above the doorknob that required a key from the outside. Officer Seiter made entry by use of a ramming tool. Officer Seiter noticed a large amount of crack cocaine on a dresser. and he also observed a large knife, several Polaroids of Townsend, and several documents on the dresser.
Officer Eric Redden was assigned to collect the evidence in the back bedroom. Officer Redden observed baggies of crack cocaine, a baggie of marijuana, a metal plate, a box of sandwich baggies, a knife, a pack of Newport cigarettes, an electronic Rolodex address book, a cellular phone, a men's watch, some paperwork, and $357.00 in cash. The cash was in denominations of a hundred, twenties, tens, fives and ones. The two Polaroids of Townsend were found on the dresser. A subpoena with Townsend listed as a witness was also located. The subpoena listed Townsend as residing at 2318 McCall and was time-stamped on March 2, 2000.
Townsend was arrested and transported to the jail. After being Mirandized, Townsend told the officers that he did not live at the residence and the drugs were his sister's. There was no evidence of any woman living in the home or in the bedroom where the drugs were found. In addition, at the jail, more crack cocaine and a pack of unopened Newports was recovered from Townsend's person.
In addition to the two grams located on Townsend's person, Townsend was also charged with constructive possession of the crack cocaine located on the roof of the car in the garage (12.8 grams) and located in the locked back bedroom of the residence. Townsend was found in the garage of the residence, 2318 McCall Street, Dayton, Ohio. During the execution of the search warrant, a quantity of crack cocaine (12.8 grams) was found in the garage on top of a car in close proximity to where Townsend was "crouched down."
In his first assignment, Townsend argues that the judgment of the trial court was against the manifest weight of the evidence presented at trial. He argues that the only conviction that was warranted was a conviction for possessing the two grams of cocaine found in his overall pocket.
Townsend notes that when police entered the residence at least six other people were on the premises. Townsend also notes that when Officer Phillips first encountered him in the garage, Mr. Burton was also present. He also notes that none of the other occupants of the house were searched to determine whether they had a key to the locked bedroom where some of the cocaine was located. He also notes that defense witnesses Dwight Barnett and Angie Hudson testified that other persons were using crack cocaine in the garage when Townsend arrived at the garage. Finally, he notes that none of the police officers saw him inside the residence.
Townsend notes that R.C. 2925.01(K) provides that possession may not be inferred from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found. Townsend argues that there was no evidence he controlled the contraband and there was no evidence presented that he owned or leased the premises.
The State appropriately notes that possession of a drug may be actual or constructive. State v. Butler (1989), 42 Ohio St.3d 174, 176. A person has constructive possession of an item when he is conscious of the presence of the object and able to exercise dominion and control over that item, even if it is not within his immediate physical possession. State v. Hankerson (1982), 70 Ohio St.2d 87, syllabus. Circumstantial evidence is sufficient to establish dominion and control over an object. See, e.g., State v. Pruitt (1984), 18 Ohio App.3d 50, 58., Appellant was found in the garage of the residence. During the execution of the search warrant, a quantity of crack cocaine (12.8 grams) was found in the garage on top of a car in close proximity to where he was "crouched down." Although mere presence in the vicinity of drugs does not prove dominion and control, readily accessible drugs in close proximity to an accused may constitute sufficient circumstantial evidence to support a finding of constructive possession. See, e.g., State v. Scalf (1998),126 Ohio App.3d at 620. Furthermore, Townsend appeared to be "`conscious of the presence of the [cocaine].'" State v. Thomas (1995), 107 Ohio App.3d 239,244, 668 N.E.2d 542, quoting State v. Hankerson, at 91. Townsend was found "crouched down" as if hiding from the officers.
The State argues that even if the jury gave Townsend the benefit of the doubt concerning the drugs found in the garage, the jury could reasonably have found him guilty of being in constructive possession of the 2.94 grams of cocaine found in the shoe in the bedroom and 12.51 grams of cocaine found inside the same bedroom.
The State notes that constructive possession can be demonstrated where the defendant exercises dominion and control over the object whether or not it is in his immediate physical possession. Citing, State v. Wolery (1976), 46 Ohio St.2d 316. The State notes that Townsend possessed the keys that unlocked the front door and bedroom door of the McCall Street residence. The State also notes that it presented evidence that the subpoena found on the bedroom dresser listed the McCall Street residence as that of the defendant's and photographs of Townsend were found inside the bedroom as well. Finally, two cars belonging to Townsend were found at the residence, one inside the garage where drugs were recovered. It is also highly relevant that there was no evidence a woman lived at the premises although Townsend told police his sister lived there and he did not.
Possession may be established when the defendant occupies the premises with others but the drugs are found in the defendant's living area and are in plain view throughout an apartment. State v. Boyd (1989),63 Ohio App.3d 790, 796-797. Readily useable drugs in close proximity to an accused may also constitute sufficient circumstantial evidence to support a finding of constructive possession. State v. Pruitt (1984),18 Ohio App.3d 50, 58.
We have reviewed the entire record, weighed the evidence and all reasonable inferences, considered the credibility of the witnesses, and determined that the jury did not lose its way and create a manifest miscarriage of justice in this case. In other words, the judgment is not against the manifest weight of the evidence. See, State v. Thompkins (1997), 78 Ohio St.3d 380, at 387. The first assignment of error is overruled.
In his second assignment, Townsend contends the trial court committed prejudicial error in admitting a photograph of him which was found in Townsend's bedroom dresser and which depicts him holding a baggie of marijuana. The State offered the photograph to show possession of the bedroom and not for purposes of proving that the defendant uses marijuana. (Tr. 163). The trial court admitted the photograph over the defendant's objection and instructed the jury to disregard Officer Redden's "assumption" that the baggie contained marijuana. (Tr. 165).
Townsend contends the trial court should have denied admission of the photograph because its probative value was outweighed by its prejudicial impact per Evid.R. 403(A).
The State argues that the trial court did not abuse its discretion in admitting the photograph because it was highly relevant to the issue of constructive possession of the drugs in the bedroom and in any event it is highly unlikely the jury convicted the defendant because he once possessed a baggie of marijuana in light of the testimony Townsend was seen throwing a baggie of marijuana under the car and had at least two grams of crack cocaine on his person at the time of his arrest.
Accordingly, the State argues any prejudice from the photograph does not "substantially" outweigh its probative value on the constructive possession issue. We agree. The second assignment of error is also overruled.
In his last assignment, Townsend contends the trial court erred in instructing the jury on the weight of the crack cocaine required to be possessed in order to find him guilty of possession of crack cocaine. Townsend contends that the trial court did not clearly instruct the jury that the weight of the drugs allegedly possessed is an essential element of the offense charged.
The trial court instructed the jury that if they found Townsend guilty of possession of drugs as possession was defined for them they should specify in their verdict whether Townsend possessed the amount specified in the indictment or some lesser amount in certain ranges. (See Tr. 666). Townsend did not object to the instructions as given. (Tr. 666, 670).
The failure to object to a jury instruction constitutes a waiver of any claim of error relative thereto, unless but for the error, the outcome of the trial would have been otherwise. State v. Underwood (1983),3 Ohio St.3d 12.
R.C. 2945.75(A) provides as follows:
 (A) When the presence of one or more additional elements makes an offense one of more serious degree:
 (1) The affidavit, complaint, indictment, or information either shall state the degree of the offense which the accused is alleged to have committed, or shall allege such additional element or elements. Otherwise such affidavit, complaint, indictment, or information is effective to charge only the least degree of the offense.
 (2) A guilty verdict shall state either the degree of the offense of which the offender is found guilty, or that such additional element or elements are present. Otherwise, a guilty verdict constitutes a finding of guilty of the least degree of the offense charged. (Emphasis ours).
An element elevates the degree of the offense, but an enhancement provision increases the penalty without elevating the offense. State v. Allen (1987), 29 Ohio St.3d 53. The possession of drugs in Ohio becomes a more serious offense based on the amount of drugs the defendant is found to have possessed. Possession of any amount of a controlled substance is sufficient to support a conviction for drug abuse. State v. Teamer (1998), 82 Ohio St.3d 490. Where the State seeks to convict the defendant for a drug possession which is a higher degree of felony than mere drug abuse it must charge and prove as an element of the offense that the defendant possessed the quantity of drugs required for that degree of offense. See, State v. Allen, supra.
In this case the trial court did not specifically tell the jury in its instructions that the State was required to prove as an "element" of the offense that Townsend possessed more than ten grams but less than twenty-five grams of crack cocaine. The judge did instruct the jury that they should specify in their verdict whether Townsend possessed the amount charged in the indictment or some lesser amount. We believe that the instruction adequately informed the jury of their duty to make the necessary factual determination required by law. See also, Apprendi v. New Jersey (2000), 530 U.S. 466, wherein the United States Supreme Court held that any fact that increases a penalty for crime beyond the prescribed statutory maximum must be submitted to the jury and proved beyond a reasonable doubt. The last assignment is likewise overruled.
The judgment of the trial court is Affirmed.
 __________ BROGAN, J.
FAIN, J., and YOUNG, J., concur.